**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JOSEPH T. SADIE, PHYLISS TRAPPENBERG, et al.** ) ) ) | **Case Nos.  1:10 CV 822; 1:11cv535** |
| Plaintiffs, ) ) | **Judge Dan Aaron Polster** |
| vs. ) ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| **CITY OF CLEVELAND, et al.** ) ) | |
| Defendant. ) | |

Before the Court is a Motion for Summary Judgment (**Doc. # 31**) filed on behalf of all Defendants in two cases that the Court previously consolidated into one: Sadie v. City of Cleveland, et al., Case No. 1:10-cv-822; and Trappenberg, et al. v. City of Cleveland, et al., Case No. 1:11-cv-535.[1]

## I.  BACKGROUND

The five Plaintiffs—Joseph Sadie, Phyllis Trappenberg, David Good, Joseph James, and Robert Nowakowski—had been long-standing members of the Cleveland police force, each with over 37 years of service, when they were forced into retirement last year pursuant to the City's mandatory retirement ordinance.[2]  The ordinance provides in pertinent part:

> It is hereby declared to be in the interest of efficiency of the Divisions of Police and Fire in the Department of Public Safety that members thereof whose status as such has been established pursuant to the Charter, be honorably retired. They

---

[1] All document references in this Opinion will be to Case No. 1:10-cv-822, unless otherwise indicated.

[2] Unless otherwise noted, the facts are taken from the parties' Joint Stipulations (Doc. # 21).

> shall be retired by the Director of Public Safety on and after March 1, 1975, if then sixty-five years of age or over, or at such later date as such members attain the age of sixty-five years. However, anyone subject to retirement under these provisions, upon written request of the Chief of Police or Fire, shall continue on active duty on a year to year basis, subject to approval of the Director following an independent medical evaluation.

Cleveland Codified Ordinance § 135.07(a) (2009).

On December 14, 2009, Martin L. Flask, Director of the City's Department of Public Safety, sent a memorandum to Chief of Police Michael McGrath and Chief of Fire Paul Stubbs, which addressed the mandatory retirement ordinance:

> In accordance with Section 135.07 of the Codified Ordinances of the City of Cleveland, all uniformed fire and police personnel attaining the age of sixty-five (65) years or older shall be honorably retired. However, anyone subject to retirement, *upon written request of the Chief of Fire or Police*, shall continue on active duty on a year-to-year basis, subject to the approval of the Director of Public Safety following an independent medical evaluation.
>
> Effective immediately, all personnel attaining the age of sixty-five (65), or those over the age of sixty-five (65) previously authorized an extension of service shall submit a written request to the respective Chief *at least 30 days* prior to the employee's birthday. The employee shall be scheduled for an independent medical evaluation after which the Chief shall forward his recommendation to the Director for review.

(Doc. # 29-32) (emphasis in original).

In turn, on December 16, 2009, Police Chief McGrath issued a notice to the police department, which first recited the language of the ordinance and then stated:

> Effective immediately, members who are over the age [of] 65 or who will attain the age of 65 in year 2010 may submit a Form-1 requesting an extension of service through the chain of command to the Chief of Police at least 30 days prior to the member's birthday.

(Doc. # 29-7). In 2010, Plaintiffs, all of whom were at least 65 years of age, submitted Form-1 requests to Chief McGrath to extend their service another year. Each request was submitted on time—at least 30 days prior to the member's birthday, in compliance with the Chief's divisional notice.

Typically, in years past, after a request was submitted, the police officer underwent an independent medical exam to determine if he or she was fit for duty. In 2010, however, none of

-2-

the officers who requested an extension underwent an exam.  (Doc. # 26-1, Tr. 50).  Instead, Chief McGrath decided that, due to budget constraints, he would turn down Plaintiffs' requests and force them to retire at the close of business on their birthdays.  (Doc. # 28-1, Tr. 48).

Prior to 2010, the police department never refused a request for an extension of active duty.  (Doc. # 26-1, Tr. 27).  In fact, Chief McGrath never denied a police officer's request so long as the officer passed the independent medical exam.  (Doc. # 28-1, Tr. 44).  The year 2010 was different, however, because the City cut the police department's budget by 4.17%.  (Id.).  In turn, Chief McGrath chose to demote several ranking officers and lay off a number of patrol officers.  (Id.).  Chief McGrath also elected not to honor any request to extend the employment of those officers over the age of 65.  (Doc. # 26-1, Tr. 24).

Plaintiffs were not satisfied with this economic justification, so they each filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that the City committed age discrimination.  The EEOC dismissed the Charges and issued each Plaintiff a Right to Sue letter.  Plaintiffs then filed the instant lawsuits.

Plaintiffs complain that their forced retirement violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; Ohio Revised Code § 4112, et seq.; and the constitutional right to Equal Protection.

As to the age discrimination claim, Plaintiffs argue that there are conflicting views about why the officers were forced into retirement—was it for financial reasons or because of age alone?  City Councilman Zack Reed apparently believed that older officers should be let go so that younger officers could replace them. (Doc. # 27-1, Tr. 67).  Safety Director Flask disagreed with that sentiment.  (Doc. # 34-1).  He believed that as along as officers are physically fit to perform their duties they have the right to decide on their own whether to retire.  (Id.).  Plaintiffs assert that these conflicting views create a genuine issue of material fact about the reason they were forced into retirement.

As to the Equal Protection claim, Plaintiffs point out that, whereas Police Chief McGrath

denied every request for extension in 2010, Fire Chief Stubbs continued the prior practice and honored all requests for extension in 2010, so that every firefighter who demonstrated physical fitness was allowed to continue serving. (Doc. # 25-1, Tr. 15). Plaintiffs argue that Flask, as the Director of Public Safety, is responsible for ensuring that police officers and firefighters are treated equally. This means that the Police Chief and the Fire Chief must uniformly abide by Flask's December 14, 2009, directive, which was issued jointly to both Chiefs. Plaintiffs construe that directive to require the Chiefs to honor—without room for discretion—every request for extension by every able-bodied service personnel over 65. Consequently, Chief McGrath's decision to deny Plaintiffs' requests and Flasks' decision to sit by and do nothing to change it amounts to unequal treatment.

## II. ANALYSIS

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party that bears the burden at trial must, after adequate time for discovery, offer enough evidence to establish the existence of every element in that party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party. LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993). If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    A.    Age Discrimination Claim

The first issue is whether Defendants committed unlawful age discrimination. The ADEA makes unlawful the discharge of any individual because of his or her age, 29 U.S.C. § 623(a)(1), but the ADEA provides an exemption, which allows state and local governments to

set mandatory retirement ages for firefighters and law enforcement officers. Id. at § 623(j). The exemption applies if the individual is over 55 years of age and is discharged pursuant to a bona fide retirement plan that is not subterfuge to evade the purposes of the ADEA. Id.

Plaintiffs do not deny that the mandatory retirement ordinance constitutes a bona fide retirement plan. Instead, they argue that Defendants used the retirement plan as subterfuge to evade the purposes of the ADEA. According to Plaintiffs, Chief McGrath's budgetary justification for not granting Plaintiffs' requests for extensions was subterfuge used to force out older officers to bring in younger ones. In support of this allegation, Plaintiffs point out that Chief McGrath had asked Deputy Chief Timothy Hennessy to prepare spreadsheets listing the officers who were 65 and older and the officers who were under 30. (Doc. # 26-1, Tr. 26, 29). Plaintiffs also note that in 2010 Defendants spent $750,000 more than was budgeted on separation pay, part of which went to the forced retirees. (Id., at 57).

"Subterfuge" is a "scheme, plan, strategem, or artifice of evasion." Public Employees Ret. Sys. v. Betts, 492 U.S. 158, 167 (1989). It is the plaintiff's burden to show that the mandatory retirement of police officers is subterfuge to evade the purposes of the ADEA. Id. at at 181. Accord Minch v. City of Chicago, 363 F.3d 615, 627 (7th Cir. 2004); Feldman v. Nassau County, 434 F.3d 177, 184–85 (2d Cir. 2006).[3] To establish subterfuge, a plaintiff must prove that the employer used the ADEA's bona fide retirement exception as a means to evade *another* provision of the act. Betts, 492 U.S. at 181. That means Plaintiffs must allege and prove Defendants took advantage of the statutory authorization to mandatorily retire police officers as a means of discriminating in another aspect of the employment relationship—that is, in an aspect other than discharge—in a way that the ADEA forbids. Minch, 363 F.3d at 629.

The Supreme Court has given two examples of viable subterfuge claims: (1) a city government adopts a retirement plan in order to retaliate against employees who protest unlawful

---

[3]Although there is no case law on point in the Sixth Circuit, as far as this Court can tell, those circuits that have confronted the issue of subterfuge in the context of a section 623(j) claim have applied the same analysis and have reached the same conclusion.

ADEA practices; or (2) an employer decides to reduce salaries for all employees while substantially increasing benefits for younger workers as subterfuge for age-based discrimination in wages. Betts, 492 U.S. at 180. The Seventh Circuit has provided another example: a local government institutes a mandatory retirement for police officers pursuant to section 623(j) while at the same time creating a new, lower-paying position not restricted by age and then inviting the mandatorily-retired officers to apply for that position—that could give rise to a claim that the employer was using the mandatory retirement plan as subterfuge for wage discrimination against older employees. Minch, 363 F.3d at 630.

Here, Plaintiffs allege none such subterfuge. In fact, Plaintiffs make no allegation whatsoever that Defendants took advantage of the statutory authority to mandatorily retire police officers as a means of discriminating in *another* aspect of the employment relationship—in an aspect other than discharge. Instead, Plaintiffs pin their case on Defendant's supposedly impure motives.

"Evidence that City officials had impure motives for reinstating a mandatory retirement age, however, will not by itself support an inference of subterfuge." Id. at 628. Moreover, the ADEA does not condition the validity of mandatory retirement plans on proof that the public employer adopted the plan genuinely believing that it is justified on a cost basis or in the interest of public safety. See Betts, 492 U.S. at 169–77; Minch, 363 F.3d at 629. Even proof that a city's decision to force the immediate retirement of police officers was based in whole or in part on stereotypical thinking—for example, that older individuals are not up to the rigors of law enforcement and should make room for younger, fresher replacements—will not establish subterfuge because it does not constitute the kind of discriminatory conduct that the ADEA prohibits. Minch, 363 F.3d at 629; Correa-Ruiz v. Fortuno, 573 F.3d 1, 13 (1st Cir. 2009). For this reason, the Seventh Circuit has concluded that an age-based cutoff in a "university's retirement contributions did not amount to subterfuge even in the face of evidence that the university preferred a younger faculty" because "defendants cannot be liable for their *motives* if

-6-

their *conduct* has not evaded the ADEA's prohibitions," and doing something that the ADEA permits—i.e., having an age-based cutoff for retirement contributions—does not evade its prohibitions. Minch, 363 F.3d at 629 (internal quotations and citations omitted) (original emphasis).

Thus, in this case, regardless of the evidence Plaintiffs adduce to show that Defendants were motivated by stereotypes—evidence which, incidentally, this Court finds to be so scant that no rational juror could thereby conclude Defendants had impure motives—Plaintiffs cannot establish subterfuge because the ADEA expressly permits mandatory retirement plans of the kind effectuated by Cleveland Ordinance 135.07. See Fortuno, 573 F.3d at 13 ("Using age as a basis for requirement retirement is precisely what section 623(j) entitles the Commonwealth to do...."). In other words, even if Chief McGrath's decision to force Plaintiffs into retirement was intended to force out older officers to bring in younger ones there would be no subterfuge because a forced retirement system is precisely what the ADEA allows. Chief McGrath's motives are irrelevant. Plaintiffs' ADEA claim is therefore meritless.

That being said, Plaintiffs suggest that, even though the City had a bona fide retirement plan in place, the Ordinance in combination with Director Flask's December 14 directive and the historical practice of always granting a request for extension meant Chief McGrath and Director Flask had no room to budge—they *had* to grant every request without exception. This argument is premised on a misreading of the Ordinance.

The Ordinance mandates retirement once a police officer reaches the age of 65, but the mandate can be overcome if three conditions are met: (1) the Chief of Police makes a written request; (2) the police officer undergoes an independent medical exam; and (3) the Safety Director approves the request. O.R.C. § 135.07(a). Yet nothing in the Ordinance *requires* the Police Chief to make a written request; it is his prerogative. Likewise, nothing *requires* the Safety Director to approve a request; he also has discretion. If it were otherwise, the Ordinance would be self-contradictory: giving the Police Chief and the Director discretion with one hand

and taking it away with the other.

To be sure, Plaintiffs point out that prior to 2010 the custom within the police department was to grant every officer's request.  But Plaintiffs fail to show why that matters for purposes of an ADEA claim.  In fact, a deviation from prior practice is perfectly consistent with the dictates of the Ordinance, for, as illustrated above, the Ordinance gives the Police Chief and the Safety Director discretion, and choosing to deviate is simply an exercise of that discretion.  Plaintiffs cite no case law in support of the proposition that a decision to involuntarily terminate police officers—when that decision is made pursuant to a mandatory retirement ordinance that leaves room for discretion—violates the ADEA.[4]

Finally, because Plaintiffs' ADEA claim fails, their state-law discrimination claim also fails.  In support of their state-law claim, Plaintiffs cite to Ohio Revised Code § 4112, et seq.  Ohio Revised Code § 4112.02(P) provides:

> Nothing in this chapter prohibiting age discrimination and nothing in division (A) of section 4112.14 of the Revised Code shall be construed to prohibit the following:...Any mandatory retirement provision not in conflict with federal law of a municipal charter, municipal ordinance, or resolution of a board of township trustees pertaining to police officers and firefighters.

Accordingly, because Defendants' retirement plan conforms with the requirements under federal law, Plaintiffs cannot make out a state-law claim of age discrimination.

B.      Equal Protection Claim

Plaintiffs' Equal Protection claim is that police officers were treated differently than firefighters:

> Fire and Police are similarly situated.  They are the two parts to safety forces.  The ordinance treats the Police Department and the Fire Department exactly the same.  Safety Director Flask, in the Flask Directive, treats police and firefighters the same....Thus, Defendants now attempt to make an illegal distinction between similarly situated members of the safety forces, which led to the deprivation of the Plaintiffs' right to employment.

---

[4]Another of Plaintiffs' arguments—that a city has to give police officers an opportunity to avoid discharge by taking an exam to prove their physical and mental fitness—has been rejected by every circuit that has addressed it.  See, e.g., Fortuno, 573 F.3d at 10–11; Minch, 363 F.3d at 620 n.4.  This Court likewise rejects it.

(Doc. # 33, at 20).

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Id. at § 1. The purpose of the Equal Protection Clause is to protect citizens against intentional and arbitrary discrimination, whether occasioned by express terms of a law or by its improper execution through duly constituted agents. Warren v. City of Athens, 411 F.3d 697, 710 (6th Cir. 2005) (citing Sioux City BridgeCo. v. Dakota County, 260 U.S. 441, 445, (1923)). Where, as here, no suspect class or fundamental right is implicated, the court must apply rational basis scrutiny. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Under the rational basis test, government action must be sustained if *any* conceivable legitimate government interest rationally supports it. See Trihealth, Inc. v. Bd. of Comm'rs, 430 F.3d 783, 790 (6th Cir. 2005).

The government has no obligation to produce evidence to sustain the rationality of its action because its choice is presumed to be valid. Id. In fact, the government's action may be based on rational speculation unsupported by evidence or empirical data. Id. Fortunately, the Court need not speculate; the evidence in the record reveals a legitimate basis that rationally supports Defendants' actions: budget concerns. See Aldridge v. City of Memphis, 404 Fed. Appx. 29, 41 (6th Cir. 2010) (holding that budget concerns are sufficient to withstand rational basis scrutiny).

It may be true, as Plaintiffs point out, that the police department spent $750,000 more than was budgeted for 2010 for separation pay, part of which went to these five plaintiffs. But a government's classification cannot be "deemed to lack rational justification simply because it is not made with mathematical nicety." Id. The Court is satisfied that Defendants' action—in refusing to grant Plaintiffs' request for extension—was rationally related to a legitimate government interest.

### III. CONCLUSION

-9-

Accordingly, for the reasons stated above, Defendants' Motion for Summary Judgment (**Doc. # 33**) is hereby **GRANTED** in full and judgment is entered in favor of Defendant. Defendants' earlier Motion to Dismiss (**Case No. 1:11-cv-535, Doc. # 9**) and Plaintiffs' Motion to Amend Complaint (**Case No. 1:11-cv-535, Doc. # 11**) are **DENIED** as moot.

**IT IS SO ORDERED.**

*/s/ Dan A. Polster     January 3, 2012*
**Dan Aaron Polster**
**United States District Judge**